IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

REPHEKA PERSADI, by her legal )
guardian, FRANKA PERSADI, )
)
    Plaintiff, )
)
v. )    CIVIL ACTION FILE
)    NO. 1:12-cv-04072-TWT
THE FULTON COUNTY SCHOOL )
DISTRICT; FRANCES BOYD, )
in her individual and her official capacity )
as former Principal of Hopewell Middle )
School; and MELANIE PICKENS, in her )
individual and her official capacity as )
former Special Education teacher at )
Hopewell Middle School, )
)
    Defendants. )

## PLAINTIFF'S BRIEF IN OPPOSITION TO
## DEFENDANT BOYD'S MOTION TO DISMISS

COMES NOW Plaintiff Repheka Persadi, by her legal guardian Franka

Persadi, and hereby files this brief in opposition to Defendant Frances Boyd's

Motion to Dismiss the Complaint (Doc. 10), showing the Court as follows:

## SUMMARY OF ARGUMENT

This is a federal civil rights action brought pursuant to 42 U.S.C. §1983 in

which Plaintiff alleges that she and other special needs students were maliciously

and sadistically abused by a special education teacher, and that such abuse was sufficiently shocking to the conscience to constitute a Fourteenth Amendment substantive due process violation.  Plaintiff contends that the school's principal, Defendant Boyd, has supervisory liability under Section 1983 because she was deliberately indifferent to complaints of abuse against the teacher, and that the Fulton County School District was liable for tolerating a pattern of abuse by the teacher over a period of several years in which Plaintiff was in the teacher's class. Plaintiff has also alleged pendant state law claims.

Defendant Boyd makes the following arguments in support of her motion to dismiss:

1)   That the damages inflicted by the teacher, Defendant Pickens, were "only" psychological, and not sufficiently conscience-shocking to constitute a substantive due process violation;

2)   That Defendant Boyd has qualified immunity because the conduct engaged in *by Defendant Pickens* was not unconstitutional under clearly established law;

3)   That Defendant Boyd is entitled to official immunity under state law because the state law allegations against her do not fall within either of the exceptions to official immunity for state law torts;

2

4)      The claims against Defendant Boyd in her official capacity are tantamount to claims against the School District that should be dismissed because the School District has sovereign immunity.

Defendant Boyd's motion does not, however, directly address the merits of the principal claim that has been asserted against her – namely, that Boyd has supervisory liability under Section 1983 because she was deliberately indifferent to the unlawful acts of one of her subordinates.  Plaintiff has sufficiently stated a plausible claim for which relief can be granted for supervisory liability under Section 1983, which only requires deliberate indifference on the part of the supervisor and not the same legal standard required to establish the underlying constitutional violation by the subordinate employee.   Plaintiff has also properly alleged an underlying substantive due process violation by Defendant Pickens, as well as a viable *Monell* claim against the School District under Section 1983.

Plaintiff has also sufficiently pled claims for negligence, battery and intentional infliction of emotional distress under state law.  To the extent that affirmative defenses such as official immunity – or the lack thererof – must be pled with factual specificity and not merely asserted as legal conclusions, it is up to Defendant to allege sufficient facts to prove the affirmative defenses raised in her answer. Plaintiff is not required to plead facts sufficient to rebut affirmative

defenses that may or may not be raised by the other side. Plaintiff has pled sufficient facts to overcome a motion to dismiss, but in the event that a more definite statement is necessary, Plaintiff should be granted leave to amend.

## FACTS

For purposes of Defendant Boyd's motion to dismiss for failure to state a claim under O.C.G.A. §9-11-12(b)(6), the only relevant facts are the allegations of Plaintiff's Complaint.   (Doc. 1).   Plaintiff has made the following allegations against Boyd:

5.

Defendant Frances Boyd ("Boyd") was, at all times material hereto, Principal of Hopewell Middle School acting within the scope of her employment by the Fulton County School District. She may be served with process at 5 Greensward Road, Johns Island, South Carolina 29455, or in the alternative, at 4469 Northside Parkway NW, Apartment 408, Atlanta, Georgia 30327.  Defendant Boyd is sued in both her individual and official capacities.

7.

At all times relevant herein, the Defendants acted under color of state law.

9.

Plaintiff Repheka Persadi is a severely disabled individual afflicted with Downs syndrome, visual and hearing problems, and other medical and developmental issues.  She suffers from severe intellectual disabilities and speech impairment.  She is currently 20 years old and enrolled in 12th grade special education classes at Roswell High School.  Her mother, Franka Persadi, was appointed as her legal guardian on February 27, 2012, and this case is brought

within two years of that date.

10.

Repheka attended Hopewell Middle School ("Hopewell") from 2004 to 2007. Because of her severe disabilities, she was placed in a small special education class at Hopewell taught by Defendant Pickens.

11.

As Repheka's mother, Franka Persadi, later learned, Defendant Pickens was abusing Repheka and her other students throughout the years of Repheka's placement in Pickens's classroom. The history and nature of these abuses were later detailed, after an extensive fact-finding inquiry, in a Final Decision of the State of Georgia Office of State Administrative Hearings filed on or about February 1, 2012 (the "Decision"), following a complaint brought before that body by the parents of another Hopewell student who was also victimized and abused by Pickens.

12.

In the Decision, the Office of State Administrative Hearings found that, "[w]ith respect to the general classroom environment, the undisputed evidence is that Pickens would scream at all the children … every day. She would burp in their faces, shake and press her breasts in their faces, and press her buttocks into their faces and pass gas. When she took the children out into the community on outings, she would curse at them." In addition, "Pickens often used vulgarities in front of her students, calling them 'little fuckers' and 'little shits.'" The Decision also reported, with regard to Repheka specifically, that Pickens had been observed spraying her with Lysol and putting her out in the hallway after Repheka passed gas in class.

13.

Defendant Pickens's special education classes were very small; according to the Decision, the 2006-2007 class consisted of only four students including Repheka. It was also in an isolated area of Hopewell known as "G Hall." As such, the atmosphere in which Repheka was subjected to Defendant Pickens's continuing abuse was claustrophobic and terrifying, and even when she was not Pickens's direct target, she was (as the Decision described the situation of the

students) "a helpless observer of the abuse of others."

14.

Because of her disabilities, Repheka was unable to protest or report her situation to her mother or others.  Repheka's mother did not learn of the abuse until she was contacted by the mother of another of Pickens's disabled students who had also been a victim of her abuse, long after the abusive conduct occurred.

15.

According to the Decision, Defendant Pickens's abusive behavior toward her special education students was reported to Defendant Frances Boyd, who was at that time the Principal of Hopewell Middle School, at least as early as November 2004 by Judy Reddick, a special education nurse with the School District who had observed the abuse. This early report was only one of many made to Boyd by multiple individuals.  Indeed, as also described in the Decision, the reports were so frequent and familiar to Boyd that, when a different special education nurse approached her with yet another abuse report regarding Pickens during the 2005-2006 school year, Boyd said "What has Melanie done this time?" before the nurse could even get the name out.

16.

Boyd, however, took no substantive corrective action in response to these frequent and numerous reports of abuse of special education students by Pickens.  Indeed, the Decision found that "[t]he evidence in the record shows that Boyd created an 'atmosphere of intimidation' at Hopewell and that many of the educators and staff were afraid they would lose their jobs if they continued to make reports about Pickens. When they did make verbal reports, Boyd took no action, insisting that, 'If it's not in writing, it didn't happen.'  In fact, Boyd appeared to be protective of Pickens, stating to Pickens after receiving a verbal report from a speech teacher regarding Pickens' inappropriate conduct, 'I'm so sorry.  It looks like they're picking on you again.' Conversely, Boyd demonstrated little concern for the students on G Hall.  She rarely spoke to the students in the hallway, did not attend activities on G Hall, such as Thanksgiving parties or Special

Olympics, and stated that she did not see why these children are in school because they 'can't really do anything.'"

19.

Based upon the Decision and other information that did not come to light until late 2011 and early 2012, Franka Persadi learned of the aforementioned abuses by Defendant Pickens and the injuries inflicted upon Repheka as a student in Pickens' class.

23.

The foregoing acts and failures by Defendant Boyd and the School District were undertaken with deliberate indifference toward the rights of Plaintiff and other special needs students with whom Pickens came into contact.

30.

As Defendant Pickens' supervisor, Defendant Boyd was aware of reports of abuse by Pickens toward her special needs students, and was in a position where she was not only able to take corrective action to stop such abuses but was required to do so.

31.

As Hopewell's Principal and as a professional educator, Boyd was deliberately indifferent to the Fourteenth Amendment rights of the citizens with whom Pickens and other members of the Hopewell staff came into contact by failing to take appropriate action to investigate and respond to reported incidents of abuse at the school.

32.

By failing to take corrective action to address incidents of reported abuse by Pickens, Boyd led Pickens to believe that her abuse of students was condoned and thereby caused such abuse to continue unabated over a period of several years, during which time Plaintiff was abused and deprived of her rights by Pickens as a result of Boyd's inaction and deliberate indifference.

33.

Defendant Boyd not only failed to take corrective action against

Pickens, but she took deliberate action to curtail the investigation of complaints about Pickens, including but not limited to the intimidation of subordinates bringing such complaints and the defense of Pickens in the face of such reports, thereby condoning and ratifying Pickens' behavior with the result being that she aided and abetted Pickens in the violation of the rights of Plaintiff and other students.

34.

Defendant Boyd has supervisory liability under 42 U.S.C. §1983 for her deliberate indifference in causing Defendant Pickens to violate Plaintiff's Fourteenth Amendment rights.

35.

At all times relevant herein, the law was clearly established that school administrator cannot turn a blind eye toward the abuse of students by a teacher, nor actively encourage such abuse, and thus Defendant Boyd is not entitled to qualified immunity.

51.

The aforementioned conduct of Boyd in condoning and enabling the abuse of students at her school was unreasonable and a gross violation of the standard of care for a similarly situated educator and school administrator, as well as being a violation of the educator's code of ethics as codified by Georgia law, thereby constituting negligence and negligence *per se* under Georgia law.

52.

The aforementioned conduct of Boyd in failing to provide appropriate oversight and supervision over Pickens constitutes negligent supervision under Georgia law.

53.

Because Boyd acted with actual malice and/or outside the scope of her permissible discretion as a public school principal, she is not entitled to official immunity under state law.

(Doc. 1, ¶¶5, 7, 9-16, 19, 23, 30-35, 51-53).

## LAW

**A.**  **Plaintiff must only plead sufficient facts to allege a plausible claim**

As the Supreme Court has noted, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), *quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957). "[F]or the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id*. at 556.   The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Iqbal*, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id*. at 679.  However, "a well-pleaded complaint may proceed even if it

9

strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 557 (internal quotation marks omitted).

> To state a claim with sufficient specificity " 'requires a complaint with enough factual matter (taken as true) to suggest' the required element." The rule " 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for **enough fact to raise a reasonable expectation that discovery will reveal evidence of'** the necessary element.'"

*Secretary of Labor v. Labbe,* 319 Fed. Appx. 761, 763 (11th Cir. 2008) (quoting *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295-96 (11th Cir. 2007) and *Twombly,* 550 U.S. at 556)) (emphasis added).

Plaintiff is only required to plead "enough factual content to nudge his claims across the line from conceivable to plausible." *Speaker v. U.S. Dept. of Health & Human Services Centers for Disease Control & Prevention*, 623 F.3d 1371, 1384-86 (11th Cir. 2010) (citing *Twombly,* 550 U.S. at 570) (reversing dismissal because plaintiff's "allegations are not barren recitals of the statutory elements, shorn of factual specificity"). In evaluating the sufficiency of the pleadings post-*Iqbal*, courts are required to construe the complaint in the light most favorable to Plaintiffs. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010). The "complaint should be read as a whole, not parsed piece by

piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).    The allegations need not "compel" an inference of liability, but need only "allow a reasonable factfinder to draw [that] inference." *Waters Edge Living, LLC v. RSUI Indem. Co.*, 355 Fed. Appx. 318, 323 (11th Cir. 2009).

*Iqbal* and *Twombly* are being overused by defendants. One District Court judge has eloquently offered the following critique:

> From this Court's perspective and experience, *Twombly* has become the most over used tool in the litigator's toolbox.  Since *Twombly* was decided, many lawyers have felt compelled to file a motion to dismiss in nearly every case, hoping to convince the Court that it now has the authority to divine what the plaintiff may plausibly be  able  to  prove rather  than accepting at the motion to dismiss stage that the plaintiff will be able to prove his allegations. These motions, which bear a close resemblance to summary judgment motions,  view  every factual allegation as a  mere  legal  conclusion and disparagingly label all attempts to set out the elements of a cause of action as "bare recitals." They  almost  always,  either  expressly  or,  more  often,  implicitly, attempt  to  burden  the  plaintiff  with  establishing  a  reasonable likelihood of success on the merits under the guise of the "plausibly stating a claim" requirement. While these cautious lawyers, who  have been  encouraged  by *Twombly* and *Iqbal,*  have  parsed  the *Twombly* decision to extract every helpful syllable, they often ignore a less well known (or at least less frequently cited) admonition from *Twombly:* "Rule 12 {b} {6}  does  not  permit  dismissal  of   a well-pleaded complaint  simply  because  'it  strikes  a   savvy judge that  actual proof  of  those facts  is improbable.'" *Watts  v.  Fla.  Int'l  Univ.,* 495

F.3d 1289, 1295 {11th Cir. 2007) (quoting *Twombly,* 550 U.S. at 556). Blinded by the *Twombly/ Iqbal* compulsion, many lawyers fail to appreciate the distinction between determining whether a claim for relief is "plausibly stated," the inquiry required by *Twombly/ Iqbal,* and divining whether actual proof of that claim is "improbable," a feat impossible for a mere mortal, even a federal judge.

*Meyer v. Snyders Lance, Inc.,* No. 4:12-cv-00215-CDL, 2012 WL 6913724 (M.D. Ga. 12/12/12), pp. 2-3.

The claims against Defendant Boyd have been pled with as much specificity as possible considering Plaintiff's diminished mental incapacity and inability to communicate -- which makes the facts of this case all the more shocking.

**B.**     **Plaintiff has pled a plausible Section 1983 supervisory liability claim**

*1.     Plaintiff has pled sufficient facts to plausibly allege a substantive due process violation*

Plaintiff has pled a Fourteenth Amendment substantive due process violation by Defendant Pickens. "In the context of a school setting, Plaintiffs' allegations regarding the alleged abuse implicate a student's fundamental liberty interest in her "bodily integrity," as protected by the Due Process Clause of the Fourteenth Amendment." *Edwards v. County Bd. of Educ. of Richmond County*, CV 104-168, 2007 WL 2345239 (S.D. Ga. 8/15/07) (citing *See Hackett v. Fulton County Sch. Dist.,* 238 F.Supp.2d 1330, 1353 (N.D. Ga. 2002) and *Doe v. Taylor Indep. Sch.*

*Dist.,* 15 F.3d 443, 451 (5th Cir. 1994)).   "[R]egardless of whether a claim is brought under the rubric of 'corporal punishment' or simply under 'abuse,' these claims are …. brought under the Fourteenth Amendment Due Process Clause, and thus the 'shocks the conscience' standard applies."   *A.B. ex rel. Baez v. Seminole County Sch. Bd.,* No. 6:05CV802ORL31KRS, 2005 WL 2105961 (M.D. Fla. 8/31/05) (citing *Dacosta v. Nwachukwa*, 304 F. 3d 1045, 1048 (11th Cir. 2002) and *Nix v. Franklin County Sch. Dist.*, 311 F. 3d 1373, 1375 (11th Cir. 2002)).

The Supreme Court has held that conduct intended to cause harm is the type of conduct that would most likely "shock the conscience, " but the Court did not say that was only way the standard could be met.

> [T]he substantive component of the due process clause is violated by [state conduct] when it "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." The concept of conscience-shocking duplicates no traditional category of common law fault, but "points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability." That is to say, "conduct **intended to injure in some way unjustifiable by any government interest** is the sort of official action **most likely to rise to the conscience-shocking level**."

*Neal ex rel. Neal v. Fulton County Bd. of Educ.*, 229 F.3d 1069, 1074 (11th Cir. 2000) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847-49 (1998)) (emphasis added).

"Conduct intended to injure in *some* way" would clearly include mental or emotional harm, particularly when there is no governmental interest in inflicting such harm. *Id.* "[E]xcessive corporal **punishment, as well as abuse**, can constitute a Fourteenth Amendment violation where the conduct shocks the conscience, and **emotional and psychological injuries are actionable under Section 1983.**" *J.A. ex rel. Abelove v. Seminole County Sch. Bd.*, No. 605CV975ORL31DAB, 2005 WL 3093407 (M.D. Fla. 11/18/05) (emphasis added).

In determining whether the subject punishment or abuse shocks the conscience, the Court should be "mindful" of the mental status of the child and the teacher's awareness of whether the child is "vulnerable to emotional abuse." *Id.*

> We are mindful that students… who suffer from severe developmental disabilities, are particularly vulnerable to psychological harm, and that **psychological injuries can be as traumatic, if not more traumatic, than physical injuries**. …We can imagine a case where an exercise of corporal punishment - even one that causes only psychological injury - "might be so severe that it would amount to torture equal to or greater than the stomach pumping abuse condemned in *Rochin*."

*T.W. ex rel. Wilson v. Sch. Bd. of Seminole County, Fla.*, 610 F.3d 588, 601-02 (11th Cir. 2010) (quoting *Abeyta ex rel. Martinez v. Chama Valley Indep. Sch.*

*Dist.*, 77 F.3d 1253, 1258 (10th Cir.1996) and citing *Rochin v. California*, 342 U.S.

165, (1952)) (emphasis added).

> The conscience-shocking threshold is more quickly reached in cases
> where the victim is particularly vulnerable to abuse and is otherwise
> defenseless. Accordingly, G.C.'s developmental disability must be
> considered in determining whether Garrett's actions and any resulting
> injury to G.C. shock the Court's conscience. [T]he issue is better
> reserved for a jury-especially considering that ... plaintiffs in this case
> are autistic children, who are more vulnerable and less capable of
> communicating than other children.

*G.C. ex rel. Cosco v. Sch. Bd. of Seminole County, Florida*, 639 F. Supp. 2d 1295,

1305 (M.D. Fla. 2009) (internal citations omitted).  The plaintiff in *Cosco* alleged

that he was subject to "psychological and emotional injuries from witnessing"

"abuse directed at his classmates," but that claim was rejected at the summary

judgment stage due to lack of evidence.  *Id.* at 1306.  The case at bar is not only

distinguishable because it is still at the pleadings stage, but also because it can be

inferred that Plaintiff was exposed to all of the abuse inflicted by Pickens on the

students in his classroom because Plaintiff – unlike the plaintiff in *Cosco* – spent

every day for four years as one of four students in Pickens' classroom (Doc. 1,

¶¶10, 21) and did not spend any part of that time in any other teacher's class.  *Id.*

    In *Abeyta*, the alleged abuse was that the teacher called the student a

prostitute, which did not rise to the level of conscience shocking  – unlike the

allegations in this case.  77 F. 3d 1253.  On the other hand, the court in *J.A. ex rel. Abelove v. Seminole County Sch. Bd., supra,* declined to dismiss a complaint alleging psychological abuse:

> In the instant case, J.A. alleges that: (1) Garrett abused and terrorized him; (2) she acted intentionally, in an outrageous manner, and for the purpose of causing him trauma; (3) he was subject to witnessing the abuse of other children; (4) these incidents caused him to suffer severe agitation and trauma; and (5) that trauma was made worse by his condition. The Court cannot say, at this stage, that J.A. will be unable to prove facts to support his claim for a Fourteenth Amendment violation.

2005 WL 3093407.  In *A.B. ex rel. Baez v. Seminole County Sch. Bd., supra,* where the defendant teacher engaged in a pattern of physical and verbal abuse that was similar to the conduct in the instant case, the plaintiff alleged "emotional and mental injury, including trauma and emotional distress."  2005 WL 2105961.  "[I]t cannot be said, given the circumstances, that A.B. will be unable to prove that Garrett's actions are shocking to the conscience.  Therefore, the Court finds that A.B. has stated a claim for a constitutional violation."  *Id.*  This Court should find likewise.

2.    *Plaintiff has pled a plausible claim of supervisory liability for which Defendant Boyd is not entitled to qualified immunity*

Plaintiff alleges that Defendant Boyd was deliberately indifferent to the

unconstitutional conduct of Defendant Pickens, and in doing so, she violated clearly established law and is thus not entitled to qualified immunity.  (Doc. 1, ¶35).  "Qualified immunity protects government officials performing discretionary functions from individual claims if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'''  *Porter v. Massarelli*, 303 Ga. App. 91, 93, 692 S.E.2d 722, 724 (2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Hope v. Pelzer*, 536 U.S. 730, 739 (2002). To overcome the defense of qualified immunity, a plaintiff must show that the Defendant had 'fair warning' of what the law required.

"The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."   *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  All that is required is that "in the light of pre-existing law, the unlawfulness must be apparent." *Id.*    In *Hope*, supra, the Supreme Court ruled that the Eleventh Circuit had in some cases applied an overly restrictive standard in determining whether prior law was clearly established by requiring that the plaintiff point to a precedent with materially similar facts.  536 U.S. 730.  Rather than requiring factually similar precedent, the Supreme Court noted that "the salient question that the Court of Appeals ought to have asked is

whether the state of the law [at the time of the alleged conduct] gave [officials] fair warning that their alleged [conduct] was unconstitutional."   536 U.S. at 741.

One way to show 'fair warning' is by pointing to a prior case with similar facts, but that is not the only way to do so.  *Lanier*, 520 U.S. at 271 (citing *Anderson*, supra, for the proposition that a general constitutional rule "identified in the decisional law" may apply with "obvious clarity to the specific conduct in question" even though the challenged conduct has not previously been held unlawful); *see also Hope*, 536 U.S. at 739. A "rule already identified by the decisional law" can even be derived from dicta in view of *Hope*'s reliance upon "the reasoning, but not the holding," of prior litigated cases.  536 U.S. at 743.  In order for the law to be clearly established, it is not necessary to show that "the very action in question has been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent."  *Anderson*, 483 U.S. at 640.

In the words of Judge Posner, "There has never been a section 1983 case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune from damages liability." *K.H. ex rel. Murphy v. Morgan,* 914 F.2d 846, 851 (7th Cir.1990).  There does not have to be a prior case involving child slavery – or a teacher passing gas in her

student's faces as part of a bizarre pattern of abuse – before the unconstitutionality of such conduct can be apparent under existing law.

As the Supreme Court ruled in *Hope*, a factually identical precedent is not required if a "rule already identified by the decisional law" is articulated with sufficient clarity that it is not dependent upon the peculiar facts of the case from which it arose.

> [I]f some authoritative judicial decision decides a case by determining that "X Conduct" is unconstitutional without tying that determination to a particularized set of facts, the decision on "X Conduct"can be read as having clearly established a constitutional principle:  put differently, the precise facts surrounding "X Conduct"are immaterial to the violation.  These judicial decisions can control "with obvious clarity" a wide variety of later factual circumstances."

*Vinyard v. Wilson*, 311 F.3d 1340, 1351 (11th Cir. 2002) (citing *Hope* and *Lanier*). Therefore, the "salient question" is not whether there is a binding precedent which is factually on "all fours" with the case at bar, but whether the contours of the law that existed at the time of the incident were sufficiently clear to give a reasonable school official "fair warning" that he or she could be liable under the circumstances of the litigated case.  *Hope*, 536 U.S. at 741.

At the time Principal Boyd was aware of complaints that Defendant Pickens was abusing students between 2004 and 2007, there was a "rule already identified

by the decisional law" that did not limit itself to the particularized facts of the case in which it arose:  That school officials cannot ignore the abuse of students by a teacher.  *See Davis v. DeKalb County Sch. Dist.*, 996 F. Supp. 1478, 1483 (N.D. Ga. 1998), <u>*aff'd*,</u> 233 F.3d 1367 (11th Cir. 2000).

Defendant's brief argues that Pickens' "acts of screaming and cursing at the children, as well as spraying Lysol on Repheka, which the Complaint makes clear was done when she passed gas, **all come under either corporal punishment, or some other method of discipline** of the students.  (Doc. 10-1, pp. 9-10) (emphasis added).  Even if that is true, the Court of Appeals has made clear that students have a "right under the Fourteenth Amendment to be free from excessive corporal punishment."  *Nix v. Franklin County Sch. Dist.*, 311 F. 3d 1373, 1378 (11th Cir. 2002) (quoting *Neal v. Fulton County Bd. Of Educ.*, 229 F. 3d 1069, 1076 (11th Cir. 2000)).  As principal, Defendant Boyd was responsible for the discipline of students at her school and for ensuring that their rights were not violated by teachers under her supervision.

It has long been established that school supervisors can be found liable if they are "deliberately indifferent to constitutional violations perpetrated by their subordinates."  *Doe v. Taylor Indep. Sch. Dist.*, 15 F. 3d 443, 455 (5th Cir. 1994) (collecting cases, including those predating the 1981 split in the Circuit.)  In *Doe*,

the court explicitly held that the student's "constitutional right to bodily integrity and the [school officials'] duty with respect to that right were **clearly established in 1987**" – meaning that the applicable law was also clearly established in 2004 when the events of this case began.  *Id.*

Where there law is clearly established for purposes of the underlying constitutional violation, "it is well established in this circuit" that a supervisor such as a school principal may be held liable – even if the supervisor did not personally participate in the violation – where "there is a causal connection between actions of the supervising official and the alleged constitutional deprivation."  *Doe v. Sch. Bd. of Broward County, Fla.*, 604 F. 3d 1248, 1266 (11th Cir. 2010) (citing *Hartley v. Parnell,* 193 F.3d 1263, 1268 (11th Cir. 1999)).

> This requisite causal connection can be established in the following circumstances: (1) when a "history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so" or (2) when a supervisor's "improper custom or policy results in deliberate indifference to constitutional rights."

*Id.*  Defendant Boyd was not only aware of the complaints about Pickens' widespread abuse of students, but she failed to take corrective action and even retaliated against those who made such complaints, thereby allowing the abuse to continue over a period of several years.  (Doc. 1, ¶¶15-19, 29-35).  Because

Plaintiff's allegations against Defendant Boyd, if proven, would constitute a violation of legal principles of which any reasonable school official should have been aware, Boyd is not entitled to qualified immunity at the pleadings stage.

**C.** **Plaintiff is not required to negatively plead Defendant Boyd's lack of entitlement to official immunity**

The same facts that Plaintiff has pled in support of a federal constitutional violation also support the pendent state claims of negligence, battery and intentional infliction of emotional distress. (Doc. 1, ¶¶45-48). Defendant Boyd is not arguing that there is a factual insufficiency in how the elements of these claims were pled, but rather, that Plaintiff alleges a legal conclusion that Boyd is not entitled to official immunity without pleading specific facts to defeat her claim of immunity.

The problem with this argument is twofold. First of all, Plaintiff is only required to plead sufficient facts to state a plausible claim. That can be done without making any reference at all to whether the Defendant has official immunity, because official immunity – or the lack thereof – is not an element of the Plaintiff's claim; rather, it is an affirmative defense that must be pled by Defendant and not Plaintiff. [1]   *See, generally*, *Collier v. Whitworth*, 205 Ga. App.

---

[1] To the extent that *Twombly* and *Iqbal* apply to affirmative defenses, it is the answer – not the complaint -- that is subject to dismissal for failure to plead with

758, 759, 423 S.E.2d 440, 441 (1992) (official immunity an "affirmative defense").[2]   Plaintiff has sufficiently pled the elements of the state tort claims and Defendant has not contested that point.  Secondly, because it is not up to Plaintiff to plead Defendant's affirmative defenses or lack of entitlement thereto, the Plaintiff's otherwise sufficient statement of claim is not defective merely because it states a legal conclusion – when the legal conclusion is nothing more than an assertion that Defendant cannot satisfy the elements of the defense.

With respect to Defendant Boyd's assertion that the claim against her in her official capacity should be dismissed, Boyd is correct that the official capacity designation is redundant of the claim asserted against the School District.  *Hafer v. Melo*, 502 U.S. 21, 25 (1991).[3]  Boyd goes on to argue that the School District – which is the equivalent of Boyd in her official capacity – has sovereign immunity.

---

specificity. *Castillo v. Roche Labs. Inc.,* No. 10-20876-CIV, 2010 U.S. Dist. LEXIS 87681, 2010 WL 3027726, at *3 (S.D. Fla. 8/22/10) (defendant's affirmative defenses must meet *Twombly/Iqbal* pleading standard).

[2] Unlike the School District's sovereign immunity, which is a "threshold issue" that must be must be overcome by Plaintiff in order to even assert a claim.  *See Watson v. Georgia Dep't of Corr.,* 285 Ga. App. 143, 144, 645 S.E.2d 629, 631 (2007).  Because the District itself clearly has sovereign immunity under Georgia law, Plaintiff has asserted no state claims against it, but sovereign immunity is not a defense to the federal civil rights claim.  *Id.*

[3] In order to avoid confusion, Plaintiff is willing to amend the casestyle to remove the capacity designations, identifying Defendants as simply the Fulton County School District, Frances Boyd, and Melanie Pickens.

That is a moot point, however, because Plaintiff is not making a state law claim against the School District – only a federal civil rights claim under *Monell v. Department of Social Servs.*, 436 U.S. 658 (1978).

**D.     Plaintiff has asserted a separate *Monell* claim against the School District**

Because Plaintiff's only claim against Boyd in her official capacity is actually a claim against the School District under *Monell*, *supra*, and since the District is a distinct party represented by separate counsel, Boyd does not have standing to assert a defense on behalf of the school district that only affects her in a nominal capacity. *See, generally, McGowan v. State of Md.*, 366 U.S. 420, 429 (1961) ("a litigant may only assert his own constitutional rights or immunities"). The Court should table consideration of that issue until it addresses Plaintiff's *Monell* claim against the School District. *Hackett v. Fulton County Sch. Dist.*, 238 F. Supp. 2d 1330, 1359, fn. 9 (N.D. Ga. 2002). That will not occur unless and until the School District files a dispositive motion on that issue. In any event, Plaintiff has pled sufficient facts (Doc. 1, ¶¶17-18, 23, 36-44) to plausibly state a claim of *Monell* liability against the School District. *Compare Davis v. DeKalb County Sch. Dist.*, 996 F. Supp. 1478, 1483 (N.D. Ga. 1998), *aff'd,* 233 F.3d 1367 (11th Cir. 2000) (discussing elements of *Monell* claim but granting summary judgment because there was no evidence that school district was aware of abuse by teacher).

## CONCLUSION

For the reasons set forth in the foregoing argument of law and citation of authority, Plaintiff respectfully requests that Defendant Boyd's motion to dismiss be denied.

Respectfully submitted this 13th day of February, 2013.

*/s/ Craig T. Jones*

_____
CRAIG T. JONES
Ga. Bar No. 399476
Lead counsel for Plaintiff

**PAGE PERRY, LLC**
1040 Crown Pointe Parkway, Suite 1050
Atlanta, GA  30338
(770) 673-0047
cjones@pageperry.com

*/s/ Mark C. Harper*

_____
MARK C. HARPER
Georgia Bar No. 328315
Co-Counsel for Plaintiff

**MAYER & HARPER**
127 Peachtree Street NE, Suite 1100
Atlanta, GA 30303
(404) 584-9588
mharper@mayerharper.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2013, I electronically filed the foregoing Plaintiff's Brief in Opposition to Defendant Boyd's Motion to Dismiss with the Clerk of Court using the CM/ECF system, which automatically will send e-mail notification of such filing to the following attorneys of record:

William H. Buechner, Jr.
Freeman Mathis & Gary, LLP
100 Galleria Parkway
Suite 1600
Atlanta, GA  30339
*(Attorney for Melanie Pickens)*

Linda A. Holz
John D. Wales
Law Offices of John D. Wales, P.C.
3330 Cumberland Boulevard
Suite 500
Atlanta, GA  30339
*(Attorneys for Frances Boyd)*

Todd E. Hatcher
Aric M. Kline
Brock, Clay, Calhoun & rogers, LLC
49 Atlanta Street
Marietta, GA  30060
*(Attorneys for Fulton County School District)*

This 13th day of February, 2013.

/s/ Craig T. Jones
_____
CRAIG T. JONES
Ga. Bar No. 399476

26