IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| REPHEKA PERSADI, by her legal guardian, FRANKA PERSADI,<br><br>    Plaintiff,<br><br>v.<br><br>THE FULTON COUNTY SCHOOL DISTRICT; FRANCES BOYD, in her individual and her official capacity as former Principal of Hopewell Middle School; and MELANIE PICKENS, in her individual and her official capacity as former Special Education teacher at Hopewell Middle School,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION FILE<br>NO. 1:12-cv-04072-TWT |

**PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT PICKENS' MOTION TO DISMISS**

COMES NOW Plaintiff Repheka Persadi, by her legal guardian Franka Persadi, and hereby files this brief in opposition to Defendant Melanie Pickens' Motion to Dismiss the Complaint (Doc. 17), showing the Court as follows:

**SUMMARY OF ARGUMENT**

This is a federal civil rights action brought pursuant to 42 U.S.C. §1983 in which Plaintiff alleges that she and other special needs students were maliciously

and sadistically abused by a special education teacher, and that such abuse was sufficiently shocking to the conscience to constitute a Fourteenth Amendment substantive due process violation.  Plaintiff contends that the school's principal, Defendant Boyd, has supervisory liability under Section 1983 because she was deliberately indifferent to complaints of abuse against the teacher, and that the Fulton County School District has *Monell*[1] liability for tolerating a pattern of abuse by the teacher over a period of several years in which Plaintiff was in the teacher's class.  Plaintiff has also alleged pendant state law claims.

Defendant Pickens makes the following arguments in support of her motion to dismiss:

1) That the Complaint fails to plead a plausible claim for relief;

2) That Plaintiff has failed to state a viable 42 U.S.C. §1983 [Fourteenth Amendment] substantive due process claim against Pickens;

3) That Pickens is entitled to qualified immunity under federal law;

4) That Pickens is entitled to official immunity under state law; and

5) That the "official capacity claims" against Defendant Pickens should be dismissed because the federal claim is duplicative of the *Monell* claim

---

[1] *Monell v. Department of Social Servs.*, 436 U.S. 658 (1978).

against the School District and the purported state law claim is barred by the District's sovereign immunity.

In response, Plaintiff has sufficiently stated a plausible claim for which relief can be granted for conduct that "shocks the conscience" under the Fourteenth Amendment substantive due process clause.  Because the law is clearly established that teachers may not abuse students, Pickens is not entitled to qualified immunity.

Plaintiff has also sufficiently pled claims for negligence, battery and intentional infliction of emotional distress under state law.  To the extent that affirmative defenses such as official immunity – or the lack thererof – must be pled with factual specificity and not merely asserted as legal conclusions, it is up to Defendant to allege supporting facts in her answer and not up to Plaintiff to negate them in her complaint. As for the official capacity "claims," Plaintiff agrees that the official capacity designation is redundant of the *Monell* claim against the School District – there being no state law claim against the District – but the issue of the School District's *Monell* liability must be raised by the District, not Pickens.

Plaintiff has pled sufficient facts to overcome a motion to dismiss, but in the event that a more definite statement is necessary, Plaintiff should be granted leave to amend.

## FACTS

For purposes of Defendant Pickens' motion to dismiss for failure to state a claim under Rule 12, the only relevant facts are the allegations of Plaintiff's Complaint.  (Doc. 1).  Plaintiff has made the following allegations against Boyd:

6.

Defendant Melanie Pickens ("Pickens") was, at all times material hereto, a Special Education teacher at Hopewell Middle School acting within the scope of her employment by the Fulton County School District.  She may be served with process at 9165 Nesbit Ferry Road, Lot 36, Alpharetta, Georgia 30022.  Defendant Pickens is sued in both her individual and official capacities.

7.

At all times relevant herein, the Defendants acted under color of state law.

9.

Plaintiff Repheka Persadi is a severely disabled individual afflicted with Downs syndrome, visual and hearing problems, and other medical and developmental issues.  She suffers from severe intellectual disabilities and speech impairment.  She is currently 20 years old and enrolled in 12th grade special education classes at Roswell High School.  Her mother, Franka Persadi, was appointed as her legal guardian on February 27, 2012, and this case is brought within two years of that date.

10.

Repheka attended Hopewell Middle School ("Hopewell") from 2004 to 2007.  Because of her severe disabilities, she was placed in a small special education class at Hopewell taught by Defendant Pickens.

11.

As Repheka's mother, Franka Persadi, later learned, Defendant Pickens was abusing Repheka and her other students throughout the years of Repheka's placement in Pickens's classroom.  The history

4

and nature of these abuses were later detailed, after an extensive fact-finding inquiry, in a Final Decision of the State of Georgia Office of State Administrative Hearings filed on or about February 1, 2012 (the "Decision"), following a complaint brought before that body by the parents of another Hopewell student who was also victimized and abused by Pickens.

12.

In the Decision, the Office of State Administrative Hearings found that, "[w]ith respect to the general classroom environment, the undisputed evidence is that Pickens would scream at all the children … every day.  She would burp in their faces, shake and press her breasts in their faces, and press her buttocks into their faces and pass gas.  When she took the children out into the community on outings, she would curse at them."  In addition, "Pickens often used vulgarities in front of her students, calling them 'little fuckers' and 'little shits.'" The Decision also reported, with regard to Repheka specifically, that Pickens had been observed spraying her with Lysol and putting her out in the hallway after Repheka passed gas in class.

13.

Defendant Pickens's special education classes were very small; according to the Decision, the 2006-2007 class consisted of only four students including Repheka.  It was also in an isolated area of Hopewell known as "G Hall."  As such, the atmosphere in which Repheka was subjected to Defendant Pickens's continuing abuse was claustrophobic and terrifying, and even when she was not Pickens's direct target, she was (as the Decision described the situation of the students) "a helpless observer of the abuse of others."

14.

Because of her disabilities, Repheka was unable to protest or report her situation to her mother or others.  Repheka's mother did not learn of the abuse until she was contacted by the mother of another of Pickens's disabled students who had also been a victim of her abuse, long after the abusive conduct occurred.

18.

… Pickens's abuse of her special education students was witnessed by other School District personnel, including but not limited to special education nurses, who in turn reported it to other School District officials, including but not limited to the coordinator of student health services for the School District and a social worker for the School District.   The Decision concluded that "the evidence shows that numerous School District employees knew about and reported the conduct," and that "[Dorothy] Pettes, the School District's Special Education Coordinator, agreed that the School District was aware that Pickens was hurting children for many years and yet allowed her to remain as a teacher at Hopewell."

19.

Based upon the Decision and other information that did not come to light until late 2011 and early 2012, Franka Persadi learned of the aforementioned abuses by Defendant Pickens and the injuries inflicted upon Repheka as a student in Pickens' class.

20.

Repheka Persaid is an adult, but because of her profound mental disability she lacked the mental capacity to bring a lawsuit on her own behalf at all times material herein, and her incapacity tolled the applicable statutes of limitations until a guardian could be appointed to sue on her behalf.

21.

Now that Franka Persadi has been appointed legal guardian of Repheka Persadi and empowered to bring this suit on Repheka's behalf, Plaintiff hereby alleges upon information and belief that Pickens severely and continuously abused Repheka during the entire time that she was one of four students in Pickens' special education class, engaging in shocking and offensive behavior that included but was not limited to the following:

- Screaming at Repheka and the other children on a daily basis;
- Burping in the faces of Repheka and the other children;
- Shaking her breasts and pressing them in the faces of Repheka and the other children;

6

- Pressing her buttocks into the faces of Repheka and the other children and passing gas;
- Cursing at Repheka and the other children when she took them into the community on outings;
- Often using vulgarities in front of Repheka and the other students, calling  them "little fuckers" and "little shits;" and
- Spraying Repheka with Lysol and putting her out in the hallway after Repheka  passed gas in class.

22.

The foregoing acts and failures by Defendant Pickens were undertaken with deliberate indifference toward the rights of Plaintiff and with specific intent to injure her.

23.

The foregoing acts and failures by Defendant Boyd and the School District were undertaken with deliberate indifference toward the rights of Plaintiff and other special needs students with whom Pickens came into contact.

24.

As a direct and proximate result of the foregoing acts and failures by Defendants, Plaintiff has been caused to suffer great injuries and losses, including but not limited to loss of personal liberty, personal security, and bodily integrity, severe and serious emotional distress, and other physical, mental, emotional, and developmental injuries and losses.

(Doc. 1, ¶¶6-7, 9-14, 18-24).

## **LAW**

### A.   **Plaintiff must only plead sufficient facts to allege a plausible claim**

As the Supreme Court has noted, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is

and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), *quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957). "[F]or the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 557 (internal quotation marks omitted).

> To state a claim with sufficient specificity " 'requires a complaint with enough factual matter (taken as true) to suggest' the required element." The rule " 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for **enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.'"**

*Secretary of Labor v. Labbe,* 319 Fed. Appx. 761, 763 (11th Cir. 2008) (quoting *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295-96 (11th Cir. 2007) and *Twombly,* 550 U.S. at 556)) (emphasis added).  "A reasonable expectation that discovery will reveal evidence" permits Plaintiff to plead not yet established facts upon information and belief.

Plaintiff is only required to plead "enough factual content to nudge his claims across the line from conceivable to plausible." *Speaker v. U.S. Dept. of Health & Human Services Centers for Disease Control & Prevention*, 623 F.3d 1371, 1384-86 (11th Cir. 2010) (citing *Twombly,* 550 U.S. at 570) (reversing dismissal because plaintiff's "allegations are not barren recitals of the statutory elements, shorn of factual specificity").   In evaluating the sufficiency of the pleadings post-*Iqbal*, courts are required to construe the complaint in the light most favorable to Plaintiffs.  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010).  The "complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v.*

*Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).   The allegations need not "compel" an inference of liability, but need only "allow a reasonable factfinder to draw [that] inference."  *Waters Edge Living, LLC v. RSUI Indem. Co.*, 355 Fed. Appx. 318, 323 (11th Cir. 2009).

*Iqbal* and *Twombly* are being overused by defendants. One District Court judge has eloquently offered the following critique:

> From this Court's perspective and experience, *Twombly* has become the most over used tool in the litigator's toolbox.  Since *Twombly* was decided, many lawyers have felt compelled to file a motion to dismiss in nearly every case, hoping to convince the Court that it now has the authority to divine what the plaintiff may plausibly be able to prove rather than accepting at the motion to dismiss stage that the plaintiff will be able to prove his allegations. These motions, which bear a close resemblance to summary judgment motions,  view  every factual allegation as a mere legal conclusion and disparagingly label all attempts to set out the elements of a cause of action as "bare recitals." They almost always, either expressly or, more often, implicitly, attempt to burden the plaintiff with establishing a reasonable likelihood of success on the merits under the guise of the "plausibly stating a claim" requirement. While these cautious lawyers, who have been  encouraged  by *Twombly* and *Iqbal,*  have parsed the *Twombly* decision to extract every helpful syllable, they often ignore a less well known (or at least less frequently cited) admonition from *Twombly:* "Rule 12 {b} {6} does not permit dismissal of  a well-pleaded complaint simply because  'it strikes a  savvy judge that  actual proof  of those facts is improbable.'" *Watts v.  Fla.  Int'l Univ.,* 495 F.3d 1289, 1295 {11th Cir. 2007) (quoting *Twombly,* 550 U.S. at 556). Blinded  by  the *Twombly/ Iqbal* compulsion,  many lawyers fail

> to appreciate the distinction  between determining whether a claim
> for relief  is "plausibly stated,"  the inquiry required by *Twombly/*
> *Iqbal,* and  divining  whether actual proof of that  claim is
> "improbable," a feat impossible for  a mere mortal,  even  a federal
> judge.

*Meyer v. Snyders Lance, Inc.,* No. 4:12-cv-00215-CDL, 2012 WL 6913724 (M.D.

Ga. 12/12/12), pp. 2-3.

The claims against Defendant Pickens have been pled with as much

specificity as possible considering Plaintiff's diminished mental incapacity and

inability to communicate  -- which makes the facts of this case all the more

shocking.

**B.**   **Plaintiff has pled a plausible substantive due process claim**

Plaintiff has pled a Fourteenth Amendment substantive due process violation

by Defendant Pickens.  "In the context of a school setting, Plaintiffs' allegations

regarding the alleged abuse implicate a student's fundamental liberty interest in her

"bodily integrity," as protected by the Due Process Clause of the Fourteenth

Amendment."  *Edwards v. County Bd. of Educ. of Richmond County*, CV 104-168,

2007 WL 2345239 (S.D. Ga. 8/15/07) (citing *See Hackett v. Fulton County Sch.*

*Dist.,* 238 F.Supp.2d 1330, 1353 (N.D. Ga. 2002) and *Doe v. Taylor Indep. Sch.*

*Dist.,* 15 F.3d 443, 451 (5th Cir. 1994)).  "[R]egardless of whether a claim is

11

brought under the rubric of 'corporal punishment' or simply under 'abuse,' these claims are …. brought under the Fourteenth Amendment Due Process Clause, and thus the 'shocks the conscience' standard applies." *A.B. ex rel. Baez v. Seminole County Sch. Bd.,* No. 6:05CV802ORL31KRS, 2005 WL 2105961 (M.D. Fla. 8/31/05) (citing *Dacosta v. Nwachukwa*, 304 F. 3d 1045, 1048 (11th Cir. 2002) and *Nix v. Franklin County Sch. Dist.*, 311 F. 3d 1373, 1375 (11th Cir. 2002)).

The Supreme Court has held that conduct intended to cause harm is the type of conduct that would most likely "shock the conscience, " but the Court did not say that was only way the standard could be met.

> [T]he substantive component of the due process clause is violated by [state conduct] when it "can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." The concept of conscience-shocking duplicates no traditional category of common law fault, but "points clearly away from liability, or clearly toward it, only at the ends of the tort law's spectrum of culpability." That is to say, "conduct **intended to injure in some way unjustifiable by any government interest** is the sort of official action **most likely to rise to the conscience-shocking level**."

*Neal ex rel. Neal v. Fulton County Bd. of Educ.*, 229 F.3d 1069, 1074 (11th Cir. 2000) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847-49 (1998)) (emphasis added).

"Conduct intended to injure in *some* way" would clearly include mental or emotional harm, particularly when there is no governmental interest in inflicting such harm.   *Id.*   "[E]xcessive corporal **punishment, as well as abuse**, can constitute a Fourteenth Amendment violation where the conduct shocks the conscience, and **emotional and psychological injuries are actionable under Section 1983.**"   *J.A. ex rel. Abelove v. Seminole County Sch. Bd.*, No. 605CV975ORL31DAB, 2005 WL 3093407 (M.D. Fla. 11/18/05) (emphasis added).

In determining whether the subject punishment or abuse shocks the conscience, the Court should be "mindful" of the mental status of the child and the teacher's awareness of whether the child is "vulnerable to emotional abuse."   *Id.*

> We are mindful that students… who suffer from severe developmental disabilities, are particularly vulnerable to psychological harm, and that **psychological injuries can be as traumatic, if not more traumatic, than physical injuries**. …We can imagine a case where an exercise of corporal punishment - even one that causes only psychological injury - "might be so severe that it would amount to torture equal to or greater than the stomach pumping abuse condemned in *Rochin*."

*T.W. ex rel. Wilson v. Sch. Bd. of Seminole County, Fla.*, 610 F.3d 588, 601-02 (11th Cir. 2010) (quoting *Abeyta ex rel. Martinez v. Chama Valley Indep. Sch.*

*Dist.*, 77 F.3d 1253, 1258 (10th Cir.1996) and citing *Rochin v. California*, 342 U.S. 165, (1952)) (emphasis added).

> The conscience-shocking threshold is more quickly reached in cases where the victim is particularly vulnerable to abuse and is otherwise defenseless. Accordingly, G.C.'s developmental disability must be considered in determining whether Garrett's actions and any resulting injury to G.C. shock the Court's conscience. [T]he issue is better reserved for a jury-especially considering that ... plaintiffs in this case are autistic children, who are more vulnerable and less capable of communicating than other children.

*G.C. ex rel. Cosco v. Sch. Bd. of Seminole County, Florida*, 639 F. Supp. 2d 1295, 1305 (M.D. Fla. 2009) (internal citations omitted).  The plaintiff in *Cosco* alleged that he was subject to "psychological and emotional injuries from witnessing" "abuse directed at his classmates," but that claim was rejected at the summary judgment stage due to lack of evidence.  *Id.* at 1306.  The case at bar is not only distinguishable because it is still at the pleadings stage, but also because it can be inferred that Plaintiff was exposed to all of the abuse inflicted by Pickens on the students in his classroom because Plaintiff – unlike the plaintiff in *Cosco* – spent every day for four years as one of four students in Pickens' classroom (Doc. 1, ¶¶10, 21) and did not spend any part of that time in any other teacher's class.  *Id.*

In *Abeyta*, the alleged abuse was that the teacher called the student a prostitute, which did not rise to the level of conscience shocking  – unlike the

allegations in this case.  77 F. 3d 1253.  On the other hand, the court in *J.A. ex rel. Abelove v. Seminole County Sch. Bd., supra,* declined to dismiss a complaint alleging psychological abuse:

> In the instant case, J.A. alleges that: (1) Garrett abused and terrorized him; (2) she acted intentionally, in an outrageous manner, and for the purpose of causing him trauma; (3) he was subject to witnessing the abuse of other children; (4) these incidents caused him to suffer severe agitation and trauma; and (5) that trauma was made worse by his condition. The Court cannot say, at this stage, that J.A. will be unable to prove facts to support his claim for a Fourteenth Amendment violation.

2005 WL 3093407.   In *A.B. ex rel. Baez v. Seminole County Sch. Bd., supra,* where the defendant teacher engaged in a pattern of physical and verbal abuse that was similar to the conduct in the instant case, the plaintiff alleged "emotional and mental injury, including trauma and emotional distress."  2005 WL 2105961.  "[I]t cannot be said, given the circumstances, that A.B. will be unable to prove that Garrett's actions are shocking to the conscience.  Therefore, the Court finds that A.B. has stated a claim for a constitutional violation."  *Id.*  This Court should find likewise.

## C.   Pickens is not entitled to qualified immunity

Plaintiff alleges that Defendant Pickens violated clearly established law and is thus not entitled to qualified immunity.  (Doc. 1, ¶28).  "Qualified immunity

protects government officials performing discretionary functions from individual claims if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.''' *Porter v. Massarelli*, 303 Ga. App. 91, 93, 692 S.E.2d 722, 724 (2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Hope v. Pelzer*, 536 U.S. 730, 739 (2002).[2]  To overcome the defense of qualified immunity, a plaintiff must show that the Defendant had 'fair warning' of what the law required.

"The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."   *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  All that is required is that "in the light of pre-existing law, the unlawfulness must be apparent." *Id.*   In *Hope*, supra, the Supreme Court ruled that the Eleventh Circuit had in some cases applied an overly restrictive standard in determining whether prior law was clearly established by requiring that the plaintiff point to a precedent with materially similar facts.  536 U.S. 730.  Rather than requiring factually similar precedent, the Supreme Court noted that "the salient question that the Court of Appeals ought to have asked is whether the state of the law [at the time of the alleged conduct] gave [officials] fair warning that their alleged [conduct] was unconstitutional."   536 U.S. at 741.

---

[2] The undersigned counsel represented the prevailing party in both *Hope* and *Porter*, as well as in the *Speaker* case cited in section A.

One way to show 'fair warning' is by pointing to a prior case with similar facts, but that is not the only way to do so. *Lanier*, 520 U.S. at 271 (citing *Anderson*, supra, for the proposition that a general constitutional rule "identified in the decisional law" may apply with "obvious clarity to the specific conduct in question" even though the challenged conduct has not previously been held unlawful); *see also Hope*, 536 U.S. at 739. A "rule already identified by the decisional law" can even be derived from dicta in view of *Hope*'s reliance upon "the reasoning, but not the holding," of prior litigated cases.  536 U.S. at 743.  In order for the law to be clearly established, it is not necessary to show that "the very action in question has been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent."  *Anderson*, 483 U.S. at 640.

In the words of Judge Posner, "There has never been a section 1983 case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune from damages liability." *K.H. ex rel. Murphy v. Morgan,* 914 F.2d 846, 851 (7th Cir.1990).  There does not have to be a prior case involving child slavery – or a teacher passing gas in her student's faces as part of a bizarre pattern of abuse – before the unconstitutionality of such conduct can be apparent under existing law.

As the Supreme Court ruled in *Hope*, a factually identical precedent is not required if a "rule already identified by the decisional law" is articulated with sufficient clarity that it is not dependent upon the peculiar facts of the case from which it arose.

> [I]f some authoritative judicial decision decides a case by determining that "X Conduct" is unconstitutional without tying that determination to a particularized set of facts, the decision on "X Conduct" can be read as having clearly established a constitutional principle:   put differently, the precise facts surrounding "X Conduct" are immaterial to the violation.   These judicial decisions can control "with obvious clarity" a wide variety of later factual circumstances."

*Vinyard v. Wilson*, 311 F.3d 1340, 1351 (11th Cir. 2002) (citing *Hope* and *Lanier*). Therefore, the "salient question" is not whether there is a binding precedent which is factually on "all fours" with the case at bar, but whether the contours of the law that existed at the time of the incident were sufficiently clear to give a reasonable school official "fair warning" that he or she could be liable under the circumstances of the litigated case.  *Hope*, 536 U.S. at 741.

At the time Defendant Pickens was abusing students between 2004 and 2007, there was a "rule already identified by the decisional law" that did not limit itself to the particularized facts of the case in which it arose:  That teachers are not permitted to abuse children, whether under the guise of corporal punishment or

otherwise.  *See Davis v. DeKalb County Sch. Dist.*, 996 F. Supp. 1478, 1483 (N.D. Ga. 1998), *aff'd*, 233 F.3d 1367 (11th Cir. 2000).   The Court of Appeals has made clear that students have a "right under the Fourteenth Amendment to be free from excessive corporal punishment."  *Nix v. Franklin County Sch. Dist.*, 311 F. 3d 1373, 1378 (11th Cir. 2002) (quoting *Neal v. Fulton County Bd. Of Educ.*, 229 F. 3d 1069, 1076 (11th Cir. 2000)).   In *Doe v. Taylor Indep. Sch. Dist.*, 15 F. 3d 443 (5th Cir. 1994), the court explicitly held that a student's "constitutional right to bodily integrity and the [school officials'] duty with respect to that right were **clearly established in 1987**" – meaning that the applicable law was also clearly established in 2004 when the events of this case began.  15 F. 3d at 455 (collecting cases, including those predating the 1981 split in the Circuit).

Because Plaintiff's allegations against Defendant Pickens, if proven, would constitute a violation of legal principles of which any reasonable schoolteacher should have been aware, Pickens is not entitled to qualified immunity at the pleadings stage.

**D.**   **Plaintiff is not required to negatively plead Defendant Boyd's lack of entitlement to official immunity**

The same facts that Plaintiff has pled in support of a federal constitutional violation also support the pendent state claims of negligence, battery and

intentional infliction of emotional distress. (Doc. 1, ¶¶45-48).  Defendant Pickens is not arguing that there is a factual insufficiency in how the elements of these claims were pled, but rather, that Plaintiff alleges a legal conclusion that Boyd is not entitled to official immunity without pleading specific facts to defeat her claim of immunity.

The problem with this argument is twofold.  First of all, Plaintiff is only required to plead sufficient facts to state a plausible claim. That can be done without making any reference at all to whether the Defendant has official immunity, because official immunity – or the lack thereof – is not an element of the Plaintiff's claim; rather, it is an affirmative defense that must be pled by Defendant and not Plaintiff.[3]   *See, generally*, *Collier v. Whitworth*, 205 Ga. App. 758, 759, 423 S.E.2d 440, 441 (1992) (official immunity an "affirmative defense").[4]   Plaintiff has sufficiently pled the elements of the state tort claims and

---

[3] To the extent that *Twombly* and *Iqbal* apply to affirmative defenses, it is the answer – not the complaint -- that is subject to dismissal for failure to plead with specificity. *Castillo v. Roche Labs. Inc.*, No. 10-20876-CIV, 2010 U.S. Dist. LEXIS 87681, 2010 WL 3027726, at *3 (S.D. Fla. 8/22/10) (defendant's affirmative defenses must meet *Twombly/Iqbal* pleading standard).

[4] Unlike the School District's sovereign immunity, which is a "threshold issue" that must be must be overcome by Plaintiff in order to even assert a claim.  *See Watson v. Georgia Dep't of Corr.*, 285 Ga. App. 143, 144, 645 S.E.2d 629, 631 (2007).  Because the District itself clearly has sovereign immunity under Georgia

Defendant has not contested that point.  Secondly, because it is not up to Plaintiff to plead Defendant's affirmative defenses or lack of entitlement thereto, the Plaintiff's otherwise sufficient statement of claim is not defective merely because it states a legal conclusion – when the legal conclusion is nothing more than an assertion that Defendant cannot satisfy the elements of the defense.

In any event, Plaintiff has specifically alleged that Pickens acted "with specific intent to injure" Plaintiff.  (Doc. 1, ¶22).  It would be impossible to allege Pickens' intent any more specifically without getting inside Pickens' head, which is not possible at the pleadings stage – or at any stage, for that matter.  In fact, intent to injure may be inferred from the facts, since it is axiomatic that individuals are presumed to intend the consequences of their actions.  *See, e.g., Patterson v. Austin,* 728 F.2d 1389, 1392 (11th Cir. 1984) ("A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts.").  Specific intent to injure satisfies the "actual malice" exception to official immunity.  *Kidd v. Coates*, 271 Ga. 33, 34, 518 S.E. 2d 124 (1999).[5]

---

law, Plaintiff has asserted no state claims against it, but sovereign immunity is not a defense to the federal civil rights claim.  *Id.*

[5] Plaintiff has alternatively pled that Pickens acted "outside the scope of her permissible discretion" (Doc. 1, ¶49) in the event that evidence of a purely ministerial duty is developed in discovery – for example, a simple and absolute command to refrain from specific conduct irrespective of the fact that teaching and

E.    **Plaintiff has asserted a separate *Monell* claim against the School District**

With respect to Defendant Pickens' assertion that the official capacity claims against her should be dismissed, Pickens is correct that the official capacity designation is redundant of the claim asserted against the School District. *Hafer v. Melo*, 502 U.S. 21, 25 (1991).[6] Pickens goes on to argue that the School District – which is the equivalent of Pickens in her official capacity – has sovereign immunity. That is a moot point, however, because Plaintiff is not making a state law claim against the School District – only a federal civil rights claim under *Monell v. Department of Social Servs.*, 436 U.S. 658 (1978).

Because Plaintiff's only claim against Pickens in her official capacity is actually a claim against the School District under *Monell*, *supra*, and since the District is a distinct party represented by separate counsel, Pickens does not have standing to assert a defense on behalf of the school district that only affects her in a nominal capacity.  *See, generally, McGowan v. State of Md.*, 366 U.S. 420, 429 (1961) ("a litigant may only assert his own constitutional rights or immunities").

---

discipline of students are discretionary in a general sense. *See, e.g. Glass v. Gates*, 311 Ga. App. 563, 574-75, 716 S.E.2d 611, 621(2011) (factual dispute as to the existence of an unwritten policy directing the employee to perform a specific duty precluded the determination of official immunity as a matter of law).

[6] In order to avoid confusion, Plaintiff is willing to amend the casestyle to remove the capacity designations, identifying Defendants as simply the Fulton County School District, Frances Boyd, and Melanie Pickens.

The Court should table consideration of that issue until it addresses Plaintiff's *Monell* claim against the School District.  *Hackett v. Fulton County Sch. Dist.*, 238 F. Supp. 2d 1330, 1359, fn. 9 (N.D. Ga. 2002).  That will not occur unless and until the School District files a dispositive motion on that issue.  In any event, Plaintiff has pled sufficient facts (Doc. 1, ¶¶17-18, 23, 36-44) to plausibly state a claim of *Monell* liability against the School District.  *Compare Davis v. DeKalb County Sch. Dist.*, 996 F. Supp. 1478, 1483 (N.D. Ga. 1998), *aff'd,* 233 F.3d 1367 (11th Cir. 2000) (discussing elements of *Monell* claim but granting summary judgment because there was no evidence that school district was aware of abuse by teacher).

## CONCLUSION

For the reasons set forth in the foregoing argument of law and citation of authority, Plaintiff respectfully requests that Defendant Pickens' motion to dismiss be denied.

Respectfully submitted this 7th day of March, 2013.


*/s/ Craig T. Jones*

_____
CRAIG T. JONES
Ga. Bar No. 399476
Lead counsel for Plaintiff

**PAGE PERRY, LLC**
1040 Crown Pointe Parkway, Suite 1050
Atlanta, GA  30338
(770) 673-0047
cjones@pageperry.com

                                                   */s/ Mark C. Harper*
                                                   _____
                                                   MARK C. HARPER
                                                   Georgia Bar No. 328315
                                                   Co-Counsel for Plaintiff

**MAYER & HARPER**
127 Peachtree Street NE, Suite 1100
Atlanta, GA 30303
(404) 584-9588
mharper@mayerharper.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2013, I electronically filed the foregoing Plaintiff's Brief in Opposition to Defendant Pickens' Motion to Dismiss with the Clerk of Court using the CM/ECF system, which automatically will send e-mail notification of such filing to the following attorneys of record:

> William H. Buechner, Jr.
> Freeman Mathis & Gary, LLP
> 100 Galleria Parkway
> Suite 1600
> Atlanta, GA  30339
> *(Attorney for Melanie Pickens)*
>
> Linda A. Holz
> John D. Wales
> Law Offices of John D. Wales, P.C.
> 3330 Cumberland Boulevard
> Suite 500
> Atlanta, GA  30339
> *(Attorneys for Frances Boyd)*
>
> Todd E. Hatcher
> Arie M. Kline
> Brock, Clay, Calhoun & rogers, LLC
> 49 Atlanta Street
> Marietta, GA  30060
> *(Attorneys for Fulton County School District)*

This 7th day of March, 2013.

> */s/ Craig T. Jones*
> _____
> CRAIG T. JONES
> Ga. Bar No. 399476